# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ANN M. THOMAS, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of the Social Security )<br>Administration, )<br>)<br>Defendant. ) | Case No. CIV-11-343-W |

## REPORT AND RECOMMENDATION

Ann M. Thomas ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of Defendant Commissioner's final decision denying Plaintiff's application for disability insurance benefits under the Social Security Act. This matter has been referred to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(b)(1)(B). Upon review of the pleadings, the record ("Tr.") and the parties' briefs, the undersigned recommends that the Commissioner's decision be reversed and the matter remanded for further proceedings.

## I. ADMINISTRATIVE PROCEEDINGS

Plaintiff initiated these proceedings by filing an application seeking disability insurance benefits in December 2007 [Tr. 16 and 127-29]. She alleged that difficulties with her knees and back became disabling as of May 11, 2003 [Tr. 144]. Plaintiff's last date insured was December 31, 2007 [Tr. 16]. Plaintiff's claims were denied initially and upon

reconsideration [Tr. 75, 76, 78-82, 84-86]. An Administrative Law Judge ("ALJ") conducted a hearing on July 27, 2009, where Plaintiff, who was represented by an attorney, testified as did a vocational expert who appeared at the request of the ALJ. [Tr. 29-74]. In his September 2009 decision, the ALJ found that transferability of job skills was not material to the determination of disability because Plaintiff was not disabled upon the direct application of the medical-vocational guidelines, or grids, specifically Rules 201.28 and 201.29[1] [Tr. 27]. The Appeals Council of the Social Security Administration declined Plaintiff's review request, making the decision of the ALJ the final decision of the Commissioner [Tr. 1-4]. Plaintiff has filed this action seeking review of the Commissioner's decision.

## II. STANDARD OF REVIEW

This court is limited in its review of the Commissioner's final decision to a determination of whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). Nonetheless, while this court can neither reweigh the evidence nor substitute its own judgment for that of the ALJ, the court's review is not superficial. "To find that the [Commissioner's] decision is supported by substantial evidence, there must be sufficient relevant evidence in the record that a reasonable person

---

[1] *See* 20 C.F.R. Pt. 404, Subpt. P, Appendix 2. The Medical-Vocational Guidelines – commonly called "grids" – consist of tables of rules which direct a finding of disabled or not disabled based on a claimant's exertional capability, age, education and work experience. Grid Rule 201.28 and 201.29 provide that an individual with a maximum sustained work capability limited to sedentary work as a result of severe medically determinable impairment(s) who is a younger individual (age 18-44) and has at least a high school education is not disabled.

might deem adequate to support the ultimate conclusion." *Bernal v. Bowen,* 851 F.2d 297, 299 (10th Cir. 1988) (citation omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* at 299.

## III. DISCUSSION

### A. Determination of Disability

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.§§423(d)(1)(A). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. 20 C.F.R. §§404.1520(b)-(f); *Williams v. Bowen*, 844 F.2d 748, 750-752 (10th Cir. 1988) (describing five steps in detail). Plaintiff bears the initial burden of proving that she has one or more severe impairments. 20 C.F.R. §§ 404.1512; *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). Where Plaintiff makes a prima facie showing that she can no longer engage in prior work activity, the burden of proof shifts to the Commissioner to show that Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Turner,* 754 F.2d at 328; *Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir. 1984). In this case, the ALJ continued the analysis through the fifth step, concluding that a finding of "not disabled" was directed by application of the grids.

**B. Plaintiff's Claims of Error**

Plaintiff's overarching claim is that the Commissioner committed legal error by conclusively relying on the grids in light of Plaintiff's significant nonexertional impairments Plaintiff's Opening Brief, 9. She also contends that the ALJ failed to discuss uncontroverted or significantly probative evidence that conflicted with his findings. Plaintiff's Opening Brief, 17. Finally, she contends that the ALJ failed to properly evaluate the medical opinion of consultative examining psychologist, Scott Donaldson. Plaintiff's Opening Brief, 21.

Plaintiff maintains that the ALJ's conclusive reliance on the grids was erroneous because he expressly stated in his step two finding that Plaintiff's severe impairments "reduced her ability to perform a full range of work at all exertional levels." Plaintiff's Opening Brief, 12. Despite this initial finding, the ALJ's residual functional capacity (RFC) finding was that Plaintiff *was* capable of performing a full range of sedentary work. *Id.*

Plaintiff notes that the ALJ found she suffered from the following severe impairments: disorders of the lumbar spine, discogenic and degenerative; chrondromalacia of knees; post-status bilateral surgeries; congestive heart failure; obesity; carpal tunnel entrapment; entrapment of the lateral femoral cutaneous nerve; obstructive sleep apnea; diabetes; hypertension; and hyperkalemia. Plaintiff's Opening Brief, 12-13 (citing Tr. 19). Plaintiff contends that these impairments imposed nonexertional limitations and/or reduced the sedentary occupational base due to manipulative limitations, the need for a sit/stand option, and an option for elevating the legs and taking extra breaks. Plaintiff argues that the ALJ failed to explain why such limitations were not included in the RFC. Plaintiff's Opening

Brief, 13. She also argues that although the ALJ found her mental impairments to be nonsevere, he was required to consider all of her impairments in reaching his RFC finding and made no findings regarding limitations resulting from her mental impairments and/or why the impairments caused no limitations. Plaintiff's Opening Brief, 14.

The Commissioner concedes that the ALJ stated that Plaintiff's impairments reduced her ability to perform a full range of work at all exertional levels [Tr. 19], but he argues "this was clearly no more than a deficient writing technique and does not amount to reversible error." Commissioner's Brief, 5. The Commissioner contends that a finding at step two that an impairment is severe does not require the ALJ to conclude that a "claimant does not have the RFC to work," and that the ALJ "clearly found that Plaintiff did not have any nonexertional limitations, and repeatedly stated that she could perform the full range of sedentary work." Commissioner's Brief, 4-5. The Commissioner argues that the ALJ properly found that Plaintiff did not have any nonexertional limitations that reduced her RFC for sedentary work, and that the evidence does not support Plaintiff's assertion that the ALJ should have included manipulative limitations, a sit/stand option, or extra breaks in his RFC finding. Commissioner's Brief, 5. Finally, the Commissioner contends the ALJ properly found that Plaintiff's non-severe mental impairments did not cause any nonexertional limitations. *Id.* at 6.

**C. Analysis**

The proper application of the grids in a case where a claimant maintains she has nonexertional limitations which impact her ability to carry out work-related demands is

explained by Social Security regulation:

> [A claimant's] impairment(s) and related symptoms, such as pain, may cause limitations of function or restrictions which limit [a claimant's] ability to meet certain demands of jobs. These limitations may be exertional, nonexertional, or a combination of both. Limitations are classified as exertional if they affect [a claimant's] ability to meet the strength demands of jobs. . . . Limitations or restrictions which affect [a claimant's] ability to meet the demands of jobs other than strength demands, that is, demands other than sitting, standing, walking, lifting, carrying, pushing or pulling, are considered nonexertional. . . . Some examples of nonexertional limitations or restrictions include the following:
>
> (I) You have difficulty functioning because you are nervous, anxious, or depressed;
> (ii) You have difficulty maintaining attention or concentrating;
> (iii) You have difficulty understanding or remembering detailed instructions;
> (iv) You have difficulty in seeing or hearing;
> (v) You have difficulty tolerating some physical feature(s) of certain work settings, e.g. you cannot tolerate dust or fumes; or
> (vi) You have difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching. . . .
>
> If your impairment(s) and related symptoms, such as pain, only affect your ability to perform the nonexertional aspects of work-related activities, the rules in appendix 2 do *not* direct factual conclusions of disabled or not disabled.

20 C.F.R. §§ 404.1569a (a) and (c) (emphasis added).

Thus, in a case where the evidence establishes that a claimant has a nonexertional limitation or restriction that affects her ability to perform work-related activities, conclusive application of the grids is improper. *Thompson v. Sullivan,* 987 F.2d 1482, 1488 (10th Cir. 1993) ("[A]n ALJ may not rely conclusively on the grids unless he finds (1) that the claimant has no significant nonexertional impairment, (2) that the claimant can *do the full range of*

6

*work at some RFC level on a daily basis*, and (3) that the claimant can perform most of the jobs in that RFC level") (emphasis added)).

The undersigned agrees with Plaintiff that the ALJ did not make the requisite findings needed to rely conclusively on the grids. First, as noted by Plaintiff, the ALJ specifically found that Plaintiff's impairments "reduced her ability to perform a full range of work *at all exertional levels*" [Tr. 19, emphasis added]. Although the Commissioner characterizes this as a mere deficiency in opinion writing, the finding is completely inconsistent with the ALJ's Residual Functional Capacity (RFC) finding. [Tr. 19, 21]. In fact, the inconsistency of those findings, particularly in light of the nature of the impairments the ALJ found to be severe, is the primary issue before the Court.

The undersigned disagrees with the Commissioner's contention that the ALJ "clearly found that Plaintiff did not have any nonexertional limitations," and "repeatedly stated that she could perform the full range of sedentary work." *See* Commissioner's Brief, 5. The ALJ discussed various medical records regarding Plaintiff's severe impairments, but made no specific findings that the impairments did or did not impose nonexertional limitations. *See* Tr. 24-26. Rather than "repeated statements" that Plaintiff was capable of the full range of sedentary work, there are only two such references: the ALJ's RFC finding that Plaintiff had the "residual functional capacity to perform the full range of sedentary work" [Tr. 21], and the ALJ's reference to his own previous RFC finding to support his decision to conclusively apply the grids [Tr. 27]. Although he did disagree with state medical consultants' finding that Plaintiff was capable of performing light work, stating "claimant could have only performed

7

sustained work at the 'sedentary' level of *physical exertion* through her date last insured," the ALJ made no mention of nonexertional limitations or to the *range* of sedentary work.[Tr. 26]. The ALJ never made a finding that the claimant had no significant nonexertional impairment. Without performing the requisite function-by-function assessment of Plaintiff's ability to perform work-related activities, *see* Social Security Ruling 96-8p, 1996 WL 374184, at *1, and without citing to any evidence upon which he based his finding, the ALJ simply concluded without explanation that Plaintiff could perform the full range of sedentary work. A mere summary of the medical records related to impairments is not sufficient. As stated in Social Security Ruling 96-8p:

> Nonexertional capacity considers all work-related limitations and restrictions that do not depend on an individual's physical strength; i.e., all physical limitations and restrictions that are not reflected in the seven strength demands, and mental limitations and restrictions. It assesses an individual's abilities to perform physical activities such as postural (e.g., stooping, climbing), manipulative (e.g., reaching, handling), visual (seeing), communicative (hearing, speaking), and mental (e.g., understanding and remembering instructions and responding appropriately to supervision). In addition to these activities, it also considers the ability to tolerate various environmental factors (e.g., tolerance of temperature extremes).
>
> *As with exertional capacity, nonexertional capacity must be expressed in terms of work-related functions*. For example, in assessing RFC for an individual with a visual impairment, the adjudicator must consider the individual's residual capacity to perform such work-related functions as working with large or small objects, following instructions, or avoiding ordinary hazards in the workplace. In assessing RFC with impairments affecting hearing or speech, the adjudicator must explain how the individual's limitations would affect his or her ability to communicate in the workplace. *Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting.*

SSR 96-8P, 1996 WL 374184, *6 (emphasis added).  Moreover, the RFC assessment must include a narrative discussion describing how the evidence supports each of the ALJ's conclusions.  *Id.* at 7. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.  Furthermore:

> In all cases in which symptoms, such as pain, are alleged, the RFC assessment must:
> * Contain a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain and other symptoms and the adjudicator's personal observations, if appropriate;
> * Include a resolution of any inconsistencies in the evidence as a whole; and
> * *Set forth a logical explanation of the effects of the symptoms, including pain, on the individual's ability to work.*

*Id.* at 7 (emphasis added).  In considering Plaintiff's symptoms, the ALJ in this case found that Plaintiff's medically determinable impairments could reasonably cause such symptoms, but that "they are not credible to the extent they are inconsistent with the above residual functional capacity assessment" [Tr. 23]. This tautological and conclusory statement ignores the requirement that the RFC assessment must include a discussion of *why* reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence. It is simply impossible to review the finding in this case without the ALJ's explanation of each symptom and why none of them, either alone or in combination, had *no* effect on Plaintiff's ability to do the full range of sedentary work.

In connection with Plaintiff's claim that the ALJ failed to consider her nonexertional pain limitation, even if substantial evidence supports the ALJ's determination that Plaintiff's

9

claim of *disabling* pain lacks credibility, "[t]he [Commissioner] must demonstrate that sufficient jobs exist in the national economy that the claimant may perform *given the level of pain he suffers*." *Hargis v. Sullivan,* 945 F.2d 1482, 1490 (10th Cir. 1991) (emphasis added). "Pain, even if not disabling, is still a nonexertional impairment to be taken into consideration, unless there is substantial evidence for the ALJ to find that the claimant's pain is insignificant." *Thompson,* 937 F.2d at 1490 - 1491. Here, the undersigned can only speculate as to whether the ALJ found the Plaintiff to have no pain (which is highly unlikely given the medical records), or whether he found that her pain did not significantly affect her ability to perform any of the work related functions required for a full range of sedentary work. A statement which simply reiterates the ALJ's own RFC finding does not answer this question.

In assessing the RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not severe. *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006). The ALJ's findings in connection with Plaintiff's non-severe mental impairment are particularly troubling and cast further doubt on his decision to conclusively rely on the grids. There is virtually no discussion of Plaintiff's mental impairments after step two. However, the ALJ did mention that he gave "little weight" to the opinion of consultative examining psychologist Scott Donaldson because he had seen Plaintiff only once, and that Donaldson's findings were inconsistent with those of Plaintiff's treating psychiatrist Wallace Heller and Plaintiff's own statements regarding her activities [Tr. 26]. No particular inconsistencies were noted by the ALJ, and the

undersigned's comparison of the report of Scott Donaldson and the treatment notes of Dr. Heller reveals that they are largely consistent with regard to Plaintiff's mental impairments and resultant limitations. [*Compare* Tr. 345-49 *with* Tr. 1022-1051.] Moreover, the ALJ completely fails to address the Treating Physician Mental Functional Assessment Questionnaire prepared by treating psychiatrist Dr. Heller in which he states that Plaintiff's mental condition imposes more than minimal limitation [Tr. 1052]. He notes the signs and symptoms of gross dysphoria, low momentum, poor sleep, irritability, intense anxiety, loss of interests/pleasure, fearfulness, and apprehension [Tr. 1052]. There appears to be no analysis of the effects of these symptoms on Plaintiff's ability to work. The only Psychiatric Review Technique form shows that there is insufficient evidence to determine the severity of Plaintiff's mental condition [Tr. 844-57].

A substantial loss of ability to meet any one of several basic work-related activities on a sustained basis (i.e., 8 hours a day, 5 days a week, or an equivalent work schedule) will substantially erode the unskilled sedentary occupational base and would justify a finding of disability. Certain mental activities are generally required by competitive, remunerative, unskilled work: understanding, remembering, and carrying out simple instructions; making judgments that are commensurate with the functions of unskilled work--i.e., simple work-related decisions; responding appropriately to supervision, co-workers and usual work situations; dealing with changes in a routine work setting. SSR 96-9p, 1996 WL 374185, at *9.

> A less than substantial loss of ability to perform any of the above basic work activities may or may not significantly erode the unskilled sedentary occupational base. The individual's remaining capacities must be assessed and

a judgment made as to their effects on the unskilled occupational base considering the other vocational factors of age, education, and work experience. When an individual has been found to have a limited ability in one or more of these basic work activities, it may be useful to consult a vocational resource.

*Id.*

The undersigned finds that the ALJ erred by conclusively applying the grids to direct a finding with respect to disability in this case. Accordingly, this matter should be reversed and remanded for further proceedings.

## RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT

For the foregoing reasons, it is recommended that this matter be reversed and remanded for further proceedings in accordance with this report. The parties are advised of their right to object to this Report and Recommendation by August 13, 2012, in accordance with 28 U.S.C. §636 and Fed.R.Civ.P. 72(b)(2). The parties are further advised that failure to make timely objection to this Report and Recommendation waives their right to appellate review of both factual and legal issues contained herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991). This Report and Recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 23rd day of July, 2012.

BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE